## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CALVIN HARDWICK, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| VICTIG BACKGROUND SCREENING (d/b/a VICTIG BACKGROUND CHECKS) | |
| Defendant. | |

Plaintiff, Calvin Hardwick ("Plaintiff" or "Mr. Hardwick"), by and through the undersigned counsel, brings this Complaint and Demand for Jury Trial ("Complaint") against Defendant Victig Background Screening (d/b/a Victig Background Checks) ("Defendant" or "Victig"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et. seq.*

### JURISDICTION AND VENUE

1.      Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681 *et seq*.

1.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

2.      Defendant regularly transacts business within the District. Defendant regularly directs business at the District. Defendant voluntarily and purposefully avails itself of the protections of the District, such that personal jurisdiction is established.

1

## PARTIES

3.      Plaintiff, Calvin Hardwick, is a natural person who resides in Cook County, Illinois. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

4.      Defendant, who offers employment screening background check services, regularly compiles and distributes consumer credit information in exchange for monetary compensation. Therefore, Defendant is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f).

5.      Defendant is incorporated in Utah and maintains a principal place of business located at 14442 South Center Point Way, Bluffdale, Utah 84065. Defendant may be served through its registered agent, c/o, Sacamano, LLC, located at 14442 South Center Point Way, Bluffdale, Utah 84065.

6.      At all times relevant to this Complaint, Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

7.      Plaintiff incorporates the above paragraphs of this Complaint as though they are fully detailed herein.

8.      In or around early March 2022, Plaintiff applied for a delivery driver position with Fooda, Inc. ("Fooda").

9.      As a part of his application, Plaintiff consented to a background check.

10.      Plaintiff was hopeful that Fooda would hire him because the hours were good, the pay was competitive, and the job was close to where he lives.

11.      Plaintiff also needed this position in order to add the "Specialty Food Service" category for his LLC filing.

12.     On or about March 11, 2022, Plaintiff interviewed for the position with Fooda.

13.     Plaintiff thought the interview went well and that he would be hired for the position.

14.     Therefore, Plaintiff told his family and friends all about the position.

15.     Upon information and belief, Fooda purchased Plaintiff's employment purposed consumer report ("background report" or "consumer report") from Defendant on or about March 11, 2022.

16.     Upon information and belief, Defendant completed Plaintiff's background report on or about March 22, 2022.

17.     However, upon information and belief, Defendant did not immediately provide the background report to Fooda.

18.     In or around mid-April 2022, Plaintiff called Fooda to follow up as he had not heard back regarding the position.

19.     Upon information and belief, Fooda informed Plaintiff that it was still waiting on his background check, but that it did not usually take this long.

20.     Plaintiff then became worried; he wondered what could be wrong with his background check and why it was taking so long.

21.     Upon information and belief, Defendant provided a copy of Plaintiff's background report to Fooda in late April or early May 2022.

22.     On or about May 4, 2022, Plaintiff called Fooda again to follow up.

23.     Upon information and belief, Fooda informed Plaintiff that he was denied the position due to his background check.

24.     Plaintiff asked Fooda how he could appeal as he did not believe there to be any issues with his background.

3

25.     Upon information and belief, Fooda informed Plaintiff that he would need to contact Victig to get a copy of his background report.

26.     Plaintiff then called Victig and requested a copy of his background report.

27.     On or about May 4, 2022, Fooda emailed Plaintiff a screenshot of his Victig background report.

28.     The screenshot showed one criminal record associated with Plaintiff, case number 89C11521001.

29.     Plaintiff was shocked as he had this record expunged on July 6, 2021.

30.     The record had not appeared on any background reports, other than the Victig background report at issue in this Complaint, since the record was expunged.

31.     Plaintiff was embarrassed about the issues with his background check and that he did not get the job.

32.     Plaintiff was also ashamed to admit to his family and friends that he was denied the position with Fooda.

33.     On or about May 5, 2022, Defendant sent Plaintiff a complete copy of the background report Defendant provided to Fooda.

34.     The background report indicated that the criminal record, case number 89C11521001, was filed on October 17, 1989.

35.     It is patently inaccurate and/or materially misleading to report Plaintiff's expunged criminal record on his background report because the record is no longer "public".

36.     On or about May 6, 2022, Plaintiff called Fooda.

37.     Plaintiff wanted to make sure that the background report he received from Victig was the same background report that Fooda received.

4

38.     Upon information and belief, Fooda's hiring manager spoke to her boss regarding Plaintiff.

39.     Upon information and belief, the hiring manager's boss looked at all of Plaintiff's information and his background report again.

40.     Upon information and belief, the hiring manager's boss determined that Plaintiff was eligible for employment.

41.     Upon information and belief, Fooda's hiring manager commented that Plaintiff could have already started working for Fooda already.

42.     Fooda then offered the position to Plaintiff.

43.     Plaintiff accepted Fooda's offer, and his start date was scheduled for May 9, 2022.

44.     Unfortunately, the damage was already done, as will be discussed in greater detail below.

45.     Upon information and belief, had Defendant not erroneously and inaccurately reported Plaintiff's expunged criminal record on his background report, Plaintiff would not have been denied for the position with Fooda on or about May 4, 2022.

46.     Upon information and belief, had Defendant not erroneously and inaccurately reported Plaintiff's expunged criminal record on his background report, Plaintiff would have started working for Fooda in or around March 2022.

47.     Upon information and belief, Defendant fails to maintain and employ reasonable procedures to assure maximum possible accuracy of the consumer information it provides to employers.

48. Upon information and belief, Defendant knowingly and willfully maintains deficient procedures because reporting more information is more profitable than reporting less and potentially leaving information off of a consumer report.

49. For example, upon information and belief, Defendant allowed an expunged record to appear on Plaintiff's consumer report without first confirming the accuracy with the actual court records.

50. Defendant regularly seeks out and procures criminal case information with the intention of including it in the consumer reports it sells for profit.

51. Defendant knows or has reason to know the effect an expungement has on a consumer's criminal record.

52. Instead of employing reasonable procedures, as required by the FCRA, Defendant blindly collects information from unreliable third-party vendors to repackage and sell in its own employment screening products.

53. Upon information and belief, Defendant buys consumer information from third-party vendors that do not have reasonable procedures in place to ensure that the information they sell is of maximum possible accuracy.

54. Defendant, a sophisticated employment screening consumer reporting agency, is aware that criminal information is often inaccurate or incomplete.

55. Upon information and belief, Defendant purchased Plaintiff's information from one or more third-party vendors that merely compile criminal data from various online sources without verifying its accuracy with actual court records.

56. Upon information and belief, none of Defendant's third-party vendors warrant the accuracy of the information they sell.

6

57.     Upon information and belief, Defendant does not exercise due diligence in ensuring it is contracting with reliable third-party vendors.

58.     Upon information and belief, Defendant does not conduct periodic quality assurance audits to ensure that it is receiving reliable consumer information from its third-party vendors.

59.     Upon information and belief, Defendant has been sued under the FCRA by consumers in the past for erroneously reporting expunged criminal records.

60.     Therefore, Defendant has notice that its procedures often result in the preparation of inaccurate consumer reports and dissemination of inaccurate consumer information.

61.     Upon information and belief, Defendant knew that the furnisher or third-party vendor provides inaccurate consumer data with some regularity.

62.     Upon information and belief, Defendant blindly relied on the information provided by the furnisher or third-party vendor despite having reason to know it may be unreliable.

63.     Upon information and belief, Defendant does not maintain reasonable procedures to assure it reports consumer information with maximum possible accuracy because it would be more expensive to independently verify the accuracy of the information provided by furnishers or third-party vendors.

64.     It is wholly unreasonable for Defendant to maintain procedures that it knows often lead to inaccurate consumer reporting with grave consequences.

65.     Despite knowing that its procedures are unreasonable, Defendant recklessly and knowingly fails to employ procedures that assure the maximum possible accuracy of consumer information compiled and published in its consumer reports.

66.     Upon information and belief, Defendant does not independently investigate the information it buys from third-party vendors before including it in consumers' background reports.

67.     Instead, Defendant has unreasonably decided that it is entitled to rely completely on third-party vendors to ensure the information included in its consumer reports is accurate.

68.     The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the was enacted to prevent.

69.     Defendant knows that its services are used to make significant consumer decisions.

70.     Upon information and belief, Defendant knew or should have known that employers make decisions on employment applications based solely on the information contained in its consumer reports.

71.     Upon information and belief, Defendant knew or should have known the negative impact that reporting a consumer's expunged criminal record was likely to have on that consumer's job application.

72.     Upon information and belief, Defendant purchases public record information from third-party vendors.

73.     Upon information and belief, those third-party vendors explicitly disclaim the accuracy of the information they provide to Defendant.

74.     Upon information and belief, Defendant reports and publishes the information provided by the third-party vendors without verifying its accuracy.

75. Upon information and belief, Defendant knows or has reason to know that the third-party vendors it purchases consumers' information from often provides inaccurate, misleading, and incomplete records.

76. Upon information and belief, Defendant reports and publishes unverified public records information without employing reasonable procedures to assure its accuracy because employing such procedures would cut into its profits.

77. At common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

78. As a direct result of Defendant's conduct, Plaintiff was originally denied employment with Fooda.

79. As a direct result of Defendant's conduct, Plaintiff lost out on income from Fooda between mid- March 2022 and May 9, 2022.

80. Consequently, Plaintiff fell behind on some of his bills and had to borrow money from his father.

81. As a direct result of Defendant's conduct, Plaintiff has wasted his time.

82. As a direct result of Defendant's conduct, Plaintiff was stressed, humiliated, and embarrassed.

83. Plaintiff suffered from sleepless nights as a result of the stress, fear, and anxiety caused by Defendant.

84. As a direct result of Defendant's conduct, Plaintiff had to delay filing his LLC paperwork, and is currently spending time and money filing additional paperwork now that he has started working for Fooda.

85.     As a direct result of Defendant's inaccurate and/or materially misleading reporting, Plaintiff has suffered actual damages including, but not limited to: job denial, sleepless nights, loss of income, wasted time, financial insecurity, and emotional distress, including but not limited to humiliation, embarrassment, stress, frustration, and mental anguish.

## <u>COUNT I</u>
### Defendant's Violations of 15 U.S.C. § 1681e(b)

86.     Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

87.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it regulates all "consumer reports." 15 U.S.C. § 1681a(d).

88.     In the parlance of the FCRA, background reports for employment purposes are "consumer reports."

89.     The FCRA provides a number of protections for job applicants who are subject to background reports.

90.     The FCRA imposes duties on consumer reporting agencies, like Defendant, to ensure that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

91.     Under 15 U.S.C. § 1681e(b), "whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

92.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish, maintain, and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer report.

93.     Specifically, Defendant failed to establish, maintain, and/or follow procedures to prevent it from inaccurately reporting Plaintiff's expunged record on his consumer report.

94.     As a result of Defendant's conduct, action and inaction, Plaintiff suffered actual damages which have been further described above.

95.     Defendant's violations of the FCRA were willful and knowing. Further, Defendant's violations were committed in reckless disregard of Plaintiff's rights as a consumer. Accordingly, Defendant is liable for Plaintiff's statutory, actual, and punitive damages pursuant to 15 U.S.C. § 1681n.

96.     Alternatively, Defendant's violations of the FCRA were negligent, rendering it liable for Plaintiff's statutory and actual damages pursuant to 15 U.S.C. § 1681o.

97.     In any event, Defendant is liable for Plaintiff's reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n, 1681o.

## TRIAL BY JURY

98.     Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Calvin Hardwick, respectfully requests judgment be entered against Defendant, for the following:

A.      Actual damages pursuant to 15 U.S.C. §§ 1681n, 1681o;

B.      Statutory damages pursuant to 15 U.S.C. §§ 1681n, 1681o;

C.      Punitive damages pursuant to 15 U.S.C. § 1681n;

D.      Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n, 1681o;

11

E.      Any pre-judgment and post-judgment interest as may be allowed under the

law; and

F.      Other and further relief as the Court may deem just and proper.

Respectfully submitted this 26th day of May, 2022.

<div style="margin-left: 40%;">

*/s/ David A. Chami*
David A. Chami, AZ No. 027585
The Consumer Justice Law Firm
8245 N. 85th Way
Scottsdale, Arizona 85258
Email: dchami@cjl.law
Telephone: (480) 626-2359

*Attorney for Plaintiff*
Calvin Hardwick

</div>

12